UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MARKETWISE, LLC, COMMON SENSE PUBLISHING, LLC, and LEGACY RESEARCH GROUP, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> TEEKACHAND TIWARI and PADDINGTON SQUARE, LLC, <br><br> Defendants. | Case No.: |

**VERIFIED COMPLAINT**

Plaintiffs MarketWise, LLC, Common Sense Publishing, LLC, and Legacy Research Group, LLC (together, "Plaintiffs") complain against Defendants Teekachand Tiwari ("Tiwari") and Paddington Square, LLC (together, "Tiwari") for the theft and misuse of Plaintiffs' trademarks and Plaintiffs' confidential and proprietary trade secrets, specifically Plaintiffs' closely guarded subscriber lists and contact information, which are being exploited for Defendants' personal gain and used to compete unlawfully with Plaintiffs, as follows:

**INTRODUCTION**

1. MarketWise, LLC ("MarketWise") and its subsidiaries (collectively, the "MarketWise Group") is one of the premier providers of financial research, software, education and tools for self-directed investors. Under a variety of banners, the MarketWise Group publishes independent investment research that empowers subscribers to become progressively better investors and managers of their financial future.

2. Since its inception with one brand in 1999, the MarketWise Group has evolved significantly, expanding into a comprehensive suite of diversified investment research products and solutions from a suite of financial research companies. Today, the MarketWise Group offers research across a variety of platforms to provide their subscribers with the independent research, education, and tools that they need to navigate the financial markets.

3. Among the MarketWise Group, there are nearly 80 editors and analysts covering a broad spectrum of investments. The MarketWise Group currently offers 29 free and 127 paid products on multiple platforms through 11 primary customer-facing brands. Based primarily on its hard-won reputation, the MarketWise Group has an engaged subscriber base of more than 600,000 paid subscribers.

4. As a subscription-based service provider, the identity of a subscriber base—past, current, or potential future—is one of the MarketWise Group's most valuable assets. The MarketWise Group's growth and success is critically dependent on its ability to target and reach its subscriber base and, as is customary in the industry, the MarketWise Group closely guards its customer information—primarily in the form of email subscriber lists—as protected trade secrets. As such, the MarketWise Group allows only limited direct access to this highly sensitive, confidential information.

5. One of the brands previously offered by the MarketWise Group was known as Palm Beach Research. The MarketWise Group carefully guarded the list of subscribers to the Palm Beach Research brand, as it guarded its other subscriber lists, and treated the Palm Beach Research brand's subscriber list as a valuable trade secret.

6. One of the MarketWise Group companies is Plaintiff Common Sense Publishing, LLC ("CSP"). CSP was a direct subsidiary of Legacy Research Group, LLC ("Legacy"). Tiwari

worked for CSP from August 2013 to February 2024 under contracts between CSP and Tiwari's wholly-owned operating entity, Paddington Square, LLC. While working for CSP, Tiwari contributed to the Palm Beach Research brand via, among other things, consumer-facing messaging. During his employment and afterwards, Tiwari did not have direct access to any subscriber information, including the subscription lists for Palm Beach Research.

7. While under contract with CSP, Tiwari was obligated to protect CSP's confidential information and trade secrets, including the subscriber lists used by CSP to disseminate publications to its subscriber base. Plaintiffs have learned, however, that Tiwari—who was separated from CSP in 2024—gained unauthorized access to CSP customer information and is currently using CSP subscriber lists to solicit subscribers in competition with MarketWise Group publications for Tiwari's own financial gain. Plaintiffs do not know exactly how Tiwari obtained the subscriber list he is unlawfully using, but a link that Tiwari placed on his new website connects him to a group of related individuals and companies that stole subscriber lists belonging to the MarketWise Group in or around 2020—this would be an obvious avenue through which Tiwari could gain access to exploit Plaintiffs' trade secrets.

8. Plaintiffs seek injunctive relief to prevent Tiwari, either directly or through Paddington Square or any other entity, from misappropriating or using any of Plaintiffs' trade secrets, with particular focus on preventing Tiwari from utilizing any of Plaintiffs' subscription information such as customer or subscriber lists or contact information. Plaintiffs also seek injunctive relief to prevent Tiwari from causing additional confusion in the marketplace by sending emails to current and former MarketWise publication subscribers using Plaintiffs' trademarks in communications that give the appearance that the emails were sent from or are otherwise affiliated with Plaintiffs or the MarketWise Group.

Plaintiffs additionally seek damages to compensate them for the harm that Tiwari has already caused, and will continue to cause, by misuse of Plaintiffs' trade secrets in violation of the Defend Trade Secrets Act and the Maryland Uniform Trade Secrets Act; through confusion between Plaintiffs' publications and Tiwari's newsletters in violation of the Lanham Act; and through Tiwari's tortious interference with Plaintiffs' business and its economic opportunities.

**PARTIES**

9. Plaintiff MarketWise, LLC, is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business in Baltimore, Maryland.

10. Plaintiff CSP is a limited liability company organized and existing under the laws of the State of Florida. CSP has thousands of subscribers located in Maryland and the principal place of business of its ultimate parent company—MarketWise—is located in Maryland.

11. Plaintiff Legacy is a limited liability company organized and existing under the laws of the State of Florida. Legacy has thousands of subscribers located in Maryland and the principal place of business of its sole member and parent company—MarketWise—is located in Maryland.

12. Defendant Tiwari, upon information and belief, is a citizen of Puerto Rico.

13. Defendant Paddington Square, LLC is licensed as a limited liability company in San Juan, Puerto Rico, and is solely owned and operated by Tiwari.

**JURISDICTION AND VENUE**

14. This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1331. Plaintiffs seek relief for violations of two federal statutes, the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*, and the Lanham Act, 15 U.S.C. § 1125, both of which prohibit Tiwari's conduct and provide for private actions for relief in federal court for violations of the statutes.

15. This Court also has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332. There is complete diversity of citizenship among the parties. Plaintiffs are seeking damages in excess of $75,000, exclusive of interest and costs.

16. This Court may exercise personal jurisdiction over Defendants because this action arises out of and is related to Defendants' purposeful contacts with the State of Maryland.

17. This Court's jurisdiction over Defendants is proper pursuant to Maryland's long-arm statute, Md. Code Ann., Cts. Jud. Proc. §§ 6-103(b)(1), (b)(3), and (b)(4).

18. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because as described above and below, a substantial part of the events giving rise to Plaintiffs' claims occurred in or caused injury to MarketWise in this judicial district.

## FACTUAL ALLEGATIONS

19. The MarketWise Group, including the MarketWise Group companies for which Tiwari and Paddington Square performed services, publish independent financial and investment research for self-directed investors in the form of online newsletters, webinars, reports, and web content. Subscribers can then use that information as part of their own research on companies, securities, and investing techniques.

20. The MarketWise Group currently utilizes nearly 80 editors and analysts to research, draft, and publish investment information for consumers across 29 free and 127 paid products on multiple platforms through 11 primary customer-facing brands.

21. The MarketWise Group currently has more than 600,000 paid subscribers.

22. Information about the MarketWise Group's subscribers to both free and paid content is incredibly valuable.

23. The lists containing information about the MarketWise Group's subscribers are owned by the MarketWise Group companies and maintained via Salesforce, a customer relationship management emailing platform. These subscriber lists include basic contact information, which may include name, phone number, email, physical address, and some demographic information.

24. Thousands of customers on the MarketWise Group's subscriber lists, including subscriber lists that are owned and managed by CSP and Legacy, are residents of Maryland.

25. The MarketWise Group uses its customer and/or subscriber lists to communicate with current, former, and prospective consumers about product offerings, deals, publications, and promotions.

26. The MarketWise Group also maintains a list of former subscribers who have unsubscribed or opted-out of publications or email correspondence, or who merely participate in the free subscriptions. The purpose of maintaining this list is to ensure that customer preferences are respected and customers can trust in the MarketWise Group as both a provider of information and as a custodian of customer data.

27. In total, the MarketWise Group maintains the information of more than 1 million former, current, and prospective subscribers. The MarketWise Group companies build these lists by, among other things, collecting subscriber data and purchasing "leads" that include the contact information of potential future subscribers from vendors that collect and sell such information. The MarketWise Group then curates the information to create usable subscriber lists unique to its publications. Once acquired, the subscriber and related information is maintained as confidential and proprietary to the MarketWise Group: access to the information is restricted and treated as a trade secret.

28. The value of these subscriber lists is immense. The MarketWise Group has collectively spent millions of dollars to create and curate the subscriber lists that the MarketWise Group companies currently own and maintain. Because the lists are comprised of customers who are likely to, or who do in fact, subscribe to investment-related publications, dissemination of the lists—and their use by competitors—would immediately expose the MarketWise Group to a high risk of subscriber losses.

29. To protect its substantial investment in this valuable intellectual property, the MarketWise Group closely guards the contents of its customer and subscriber lists, allowing extremely limited access only to those individuals who need access to such information to perform services for the MarketWise Group. Even individuals who author or edit MarketWise Group publications do not have access to the contents of the subscriber lists.

30. When these subscriber lists are necessarily shared with some third-party vendors to facilitate, for example, additional lead generation or other data analysis, many of the details within the lists, including some email addresses, are "hashed" or rendered unreadable in order to prevent access to the data in the lists. Vendors who are given access to lists are contractually restricted and may not use the MarketWise Group's proprietary information for any other purpose, nor may they retain or commercialize subscription information.

31. The MarketWise Group, including Legacy and CSP, has made reasonable efforts to safeguard its proprietary information and its trade secrets from misappropriation, misuse, and theft by unauthorized persons.

32. Since its founding, MarketWise has worked hard to establish trusted relationships with its subscribers, and the fact that the MarketWise Group has a substantial subscriber base attests to its success. As a group of companies primarily focused on providing financial and

investment research for self-directed investors, the information published across the MarketWise Group's platforms must be trusted by the end-point consumer to be effective and profitable. One of the hallmarks of MarketWise Group publications is the integrity of its content and, correspondingly, respect for the wishes of subscribers who decide to cancel subscriptions or who opt out of receiving emails from MarketWise Group publications.

33. Because the success of its company hinges on its relationship with subscribers, the MarketWise Group, including Legacy and CSP, requires its independent contractors to agree to uphold the highest standards of corporate and financial integrity.

**Tiwari's Employment**

34. In or around 2013, CSP and Tiwari executed an Editorial Agreement under which Tiwari would serve as a consultant and editor for multiple investment newsletters for CSP (dba "Palm Beach Research Group"), a subsidiary of Legacy. The Editorial Agreement was subsequently amended, but its material terms remained the same.

35. These material terms included Tiwari's acknowledgment and agreement that "information and techniques obtained by him" were "proprietary and confidential" such that Tiwari would not "provide such information and techniques to any third party or use such information and techniques on behalf of a third party or himself."

36. The Editorial Agreement also provided that "the disclosure of … confidential and proprietary information and techniques, which are considered trade secrets, would greatly harm" the MarketWise Group such that any signatory to the Agreement must take reasonable measures to protect the MarketWise Group from the harm of such disclosure and use of its confidential information and trade secrets, including not directly or indirectly publishing, marketing, selling,

8

or distributing any investment newsletter which competes with a MarketWise Group publication for at least six months following the termination of the Agreement.

37. CSP terminated its relationship with Tiwari on February 1, 2024, for violations of the Editorial Agreement and the General Guidelines for Publications Discussing Private Offerings. Tiwari contested the financial terms of his termination, and the employment dispute is currently in arbitration proceedings in Florida.

**Theft of Legacy Research Group Files Including Subscriber Information and Lists**

38. In October 2019, Brian Hronsky, then an employee at Legacy, began downloading several files about the subscribers of MarketWise products, including those subscribed to the Palm Beach Research brand, for his own unauthorized purposes.

39. These files contained specific subscriber lists, as well as the information of thousands of Legacy and CSP customers who are also customers of other MarketWise Group companies, including customers residing in the State of Maryland.

40. These downloads of sensitive consumer data, including the subscriber lists therein, were discovered when the data was sold back to Legacy by Leadmark, LLC, a company that Plaintiffs later learned was connected with Hronsky, as well as various businesses that were all operated under the aegis of one purported owner, "Max Parker."

41. The businesses affiliated with "Max Parker" that sold leads to Legacy included Everest Ads, LLC, Platoon Marketers, LLC, Panorama Profits, LLC, Not Only Ads, LLC, Sparks Affiliates, LLC, and Finance & Investing Traffic, LLC, (together, "the Everest Affiliates").

42. The Everest Affiliates were all created on the same days, with the first batch created within seven days of one of Hronsky's subscriber list downloads. All of the companies designated

the same registered agent and were registered in the same state, and many of the companies had the same address.

43. Within days of their incorporation, some of the Everest Affiliates began driving leads to Legacy for Legacy marketing webinars, as well as working with other MarketWise Group companies. When Plaintiffs suspected that they were buying back their own lists, they analyzed the overlap between the leads provided by Leadmark, LLC and the Everest Affiliates with the emails contained in the stolen downloads, and the overlap was as high as 83%.

44. The stolen leads that Leadmark and the Everest Affiliates sold back to Legacy included residents of the State of Maryland.

45. Further investigation by the MarketWise Group revealed additional companies associated with Max Parker and the Everest Affiliates, including Maximum Impact Consulting, LLC, which shared a creation date, an address, and registered agent with the Everest Affiliates entities.

**Tiwari's Unauthorized Use of MarketWise's Confidential Information, Trade Secrets, and Trademarks Comes to Light**

46. Several months after Tiwari's contract with CSP had been terminated, Plaintiffs began to receive notifications from subscribers of its Palm Beach Research brand, as well as employees of other MarketWise Group companies, that Tiwari had begun sending marketing emails addressed to Palm Beach Research subscribers.

47. Specifically, MarketWise received copies of emails in which Tiwari denigrated MarketWise as a company and encouraged Palm Beach Research subscribers to follow Tiwari's new venture, "Big T's Inside Crypto," instead. These emails are attached to the Complaint as Exhibits A and B.

48. Tiwari did little to conceal his misuse of the stolen MarketWise Group's subscriber lists. On July 12, 2024, Tiwari sent an email addressed to "all prior Palm Beach subscribers"—a list that could only have come from the unlawful download by Hronsky and which was made available to "Max Parker" and the Everest Affiliates in violation of Hronsky's obligations as an employee and the vendors' responsibilities under their contracts, all as described above—stating that Tiwari was "sorry for the way Palm Beach Research Group has treated you," and introducing the email recipient to a "special report where [Tiwari] review[s] and cover[s] all the past Palm Beach Confidential recommendations."

49. Tiwari's emails make repeated use of the MarketWise Group trademarks, including the words "Marketwise" and "MarketWise," both of which are marks currently pending review by a trademark examiner, as well as "Palm Beach Daily" and "Palm Beach Venture," both marks associated with the Plaintiffs and their associated publications.

50. MarketWise is aware of at least eight current or former MarketWise Group employees, independent contractors and subscribers who received unsolicited emails from Tiwari because their emails were on the Palm Beach Research subscriber list. Some recipients received Tiwari's emails to their personal email addresses.

51. The list of paid subscribers to Palm Beach Research, to which Tiwari addresses his emails, contains more than 2500 Maryland residents.

52. At least four currently known recipients of Tiwari's unlawful emails reside in the State of Maryland. Upon information and belief, many more of the 2500 Maryland residents whose names reside on the lists unlawfully obtained by Tiwari also received similar emails.

53. Upon information and belief, Tiwari also sent these emails to individuals who had stopped subscribing to the MarketWise Group publications or had otherwise opted out from

11

receiving communications from the MarketWise Group. Tiwari's emails confused several of these recipients, who believed that Legacy and CSP were continuing to email them against their explicit instructions.

54. Some recipients of Tiwari's unsolicited emails have reported to MarketWise that Tiwari has sent repeated emails to their addresses, increasing the risk of overstimulation that would vastly decrease the value of the MarketWise Group's own communications to individuals on its subscriber lists.

55. MarketWise has received complaints from both subscribers and its own personnel regarding Tiwari's emails, including concerns that Legacy or CSP provided Tiwari with the recipients' email information without authorization.

56. These complaints expose MarketWise to the risk of cancelled subscriptions and otherwise damaged relationships with customers.

57. Plaintiffs do not know where Tiwari obtained the MarketWise Group's proprietary information, but Tiwari has an obvious business relationship with Maximum Impact Consulting, LLC—a company connected to the Everest Affiliates that sold Legacy its own stolen subscriber lists. As of July 26, 2024, the Terms & Conditions page for Tiwari's site redirected visitors to the Terms & Conditions for Visionaryprofit.com, a website owned by Maximum Impact Consulting, LLC.

58. The relationship between Tiwari and Maximum Impact Consulting, LLC, and Tiwari's use of a list of "Palm Beach subscribers" to email current and former subscribers of the MarketWise Group, reasonably leads Plaintiffs to believe that Tiwari is connected with and using subscriber lists stolen by the Everest Affiliates and/or Max Parker as a result of Hronsky's unlawful download of the MarketWise Group's trade secrets.

59. Tiwari's use of Plaintiffs' subscriber lists is unlawful and was never authorized by either Plaintiffs or by the owners of the email addresses on the subscriber lists.

60. Compounding his unlawful use of the email lists, on July 24, 2024, Tiwari published a YouTube video that is a copy of an Instagram live stream in which he offers certain market advice and responds to purported viewer comments on the Instagram live stream that are directed specifically at inducing viewers to terminate their business relationships with the MarketWise Group, claiming that many already have done so.[1]

61. Within the first two minutes of this video, Tiwari encourages subscribers of Plaintiffs' products to demand refunds of subscription fees already paid on the basis that MarketWise Group subscribers were paying specifically for Tiwari's advice, which is now located on his own platform.

62. Tiwari encourages Plaintiffs' customers to demand refunds even while acknowledging that Tiwari was merely a "paid contractor" for Plaintiffs, a disclaimer that does not appear on the emails to current and former MarketWise Group subscribers described above. Tiwari's admission in the video that Tiwari was merely a "paid contractor" concedes that Tiwari has no right to use the MarketWise Groups marks or to communicate with MarketWise Group subscribers in any way.

63. Later in the video, and consistent with the evident scheme behind the unlawful mailings described above, Tiwari confirms that former paid subscribers of MarketWise Group products have ceased their subscriptions or received refunds from Plaintiffs for previously purchased MarketWise products as a direct result of Tiwari's urging.

---

[1] Teeka Tiwari, *Ethereum ETF: The Game-Changer for Crypto!│July 24, 2024*, YOUTUBE (July 24, 2024), https://www.youtube.com/watch?v=m8ZGiwsmBdA&t=40s.

64. Upon information and belief, Tiwari has utilized his business, co-Defendant Paddington Square, LLC to organize, conduct, or assist with the illegal activity described throughout this Verified Complaint.

## CAUSES OF ACTION

### COUNT I: VIOLATION OF DEFEND TRADE SECRETS ACT
### 18 U.S.C. § 1836, et seq.

65. Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 64, as if set forth at length herein.

66. Plaintiffs' confidential information and trade secrets—including, but not limited to, customer lists and subscriber email information—constitute trade secrets under, and are protected by, the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq*.

67. Plaintiffs have made and continue to make reasonable efforts to maintain the secrecy of the trade secrets accessed and acquired by Tiwari, including limiting access to said information and requiring employees to maintain the secrecy and proper treatment thereof.

68. The trade secrets accessed and unlawfully acquired by Tiwari derive actual and potential economic value from not being generally available to the public or to competitors of the MarketWise Group.

69. By accessing and/or acquiring the Confidential Information and Trade Secrets in an unauthorized manner and through improper means, Tiwari violated the Defend Trade Secrets Act, including, but not limited to, 18 U.S.C. § 1839(5)(A).

70. By retaining, using, and planning to use the Confidential Information and Trade Secrets in an unauthorized manner, Tiwari violated the Defend Trade Secrets Act, including, but not limited to, 18 U.S.C. § 1839(5)(A).

## COUNT II: VIOLATION OF THE MARYLAND UNIFORM TRADE SECRETS ACT
Md. Code Ann., Com. Law § 11-1201, *et seq*.

71. Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 70, as if set forth at length herein.

72. Plaintiffs' confidential information—including but, not limited to, customer lists and subscriber email information—constitute trade secrets under, and are protected by, the Maryland Uniform Trade Secrets Act, Md. Code Ann., Com. Law § 11-1201, *et seq*.

73. Plaintiffs have made and continue to make reasonable efforts to maintain the secrecy of the trade secrets accessed and acquired by Tiwari, including limiting access to said information and requiring employees to maintain the secrecy and proper treatment thereof.

74. The trade secrets accessed and acquired by Tiwari derive actual and potential economic value from not being generally available to the public or to Plaintiffs' competitors.

75. By accessing and acquiring the Confidential Information and Trade Secrets in an unauthorized manner and through improper means, Tiwari violated the Maryland Uniform Trade Secrets Act.

76. By retaining, using, and planning to use Plaintiffs' Confidential Information and Trade Secrets in an unauthorized manner, Tiwari violated the Maryland Uniform Trade Secrets Act.

## COUNT III: VIOLATION OF THE LANHAM ACT
15 U.S.C. § 1125.

77. Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 76, as if set forth at length herein.

78. Plaintiffs have several trademarks, all of which are entitled to protection.

79. Tiwari used Plaintiffs' protected marks within interstate commerce when he sent emails containing protected marks to recipients in more than one state.

80. Tiwari's use of Plaintiffs' protected marks has resulted in a likelihood of (and actual) consumer confusion.

81. Tiwari's use of Plaintiffs' protected marks was for the purpose of advertising a product which directly competes with the trademarked item in the goods and services provided. By using Plaintiffs' protected trademarks in interstate commerce and causing a likelihood of (and actual) confusion amongst consumers, Tiwari violated the Lanham Act.

**COUNT IV: TORTIOUS INTERFERENCE WITH MARKETWISE'S EXISTING AND PROSPECTIVE BUSINESS RELATIONS**

82. Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 81, as if set forth at length herein.

83. Plaintiffs had and still have an established business relationship with their subscribers on all platforms.

84. Plaintiffs also have a reasonable expectation of a continuing and expanding relationship with their subscribers.

85. Tiwari, as a contractor, knew of the existing and future business relationships among Plaintiffs and their subscribers to those publications.

86. Tiwari purposefully disrupted, and continues to disrupt, the business relationship among Plaintiffs and their subscribers by retaining, using, and planning to use the Confidential Information and Trade Secrets that he accessed and/or acquired in an unauthorized manner.

87. The MarketWise Group has been damaged as a result of Tiwari's actions.

**PRAYER FOR RELIEF**

WHEREFORE, the MarketWise Group respectfully requests the Court to enter judgment in Plaintiffs' favor and against Defendants as follows:

a. Preliminarily and permanently enjoining Defendants from misappropriating, using and/or disclosing Plaintiffs' Confidential Information and Trade Secrets;

b. Awarding compensatory damages in an amount above $75,000 to be determined pursuant to, without limitation, the Maryland Uniform Trade Secrets Act, the federal Defend Trade Secrets Act, and the Lanham Act, and for tortious interference with existing and prospective business relations;

c. Awarding exemplary damages pursuant to, without limitation, the Maryland Uniform Trade Secrets Act, the federal Defend Trade Secrets Act, the Lanham Act, and for tortious interference with existing and prospective business relations;

d. Awarding attorneys' fees and costs resulting from this action pursuant to, without limitation, the Maryland Uniform Trade Secrets Act, the federal Defend Trade Secrets Act, and the Lanham Act; and

e. Any other relief this Court may deem just and proper.

Dated: August 13, 2024					Respectfully submitted,


					/s/ Steven H. Levin
					―――――――――――――――――
					Steven H. Levin, Bar No. 28750
					Brigida Benitez, Bar No. 17034
					STEPTOE LLP
					1330 Connecticut Avenue, NW
					Washington, DC 20036
					Telephone: 202.429.3000
					Fax: 202.429.3902
					slevin@steptoe.com
					bbenitez@steptoe.com

					Michael Dockterman (*pro hac vice* pending)
					STEPTOE LLP
					277 West Monroe Street, Suite 4700
					Chicago, IL 60606
					Telephone: 312.577.1300
					Fax: 312.577.1270
					mdockterman@steptoe.com

**<u>VERIFICATION</u>**

I verify under penalty of perjury that the foregoing is true and correct.

                                              Executed this 13th day of August 2024.

_____
Marco Galsim